**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM CUMMINGS,** | : | **CIV NO. 1:21-CV-1006** |
| | : | |
| **Plaintiff,** | : | **(Judge Mannion)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **J. SCHICKVAM, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

I.   **<u>Introduction and Background</u>**

This litigation undeniably has a protracted and tortured procedural history. This lawsuit began on June 7, 2021, when William Cummings, a state prisoner, filed a *pro se* complaint with this court. (Doc. 1). Since that time, Cummings has displayed a persistent, and regrettable inability to follow the court's directions. For example, despite our explicit guidance, Cummings filed numerous documents which purported to amend his complaint in a random, fragmentary, and incomplete fashion. This practice continued for three months, during which time Cummings submitted dozens of proposed complaints, despite our repeated admonitions that Cummings should file a single, consolidated complaint setting for all of his allegations. (Docs. 15-57). Eventually, Cummings came into compliance with our

directions on October 4, 2021, filing what he described as a comprehensive proposed amended complaint in this case—a document that we then treated as the operative pleading in this lawsuit. (Doc. 63).

Cummings's amended complaint demanded a great deal from the reader, a challenge which may be explained by the fact that in this amended complaint, Cummings acknowledged that he has an extensive mental health history. (Id., ¶ 57). Cummings' amended complaint named approximately 137 individual defendants, many of whom were identified in the introduction to the complaint but then were never mentioned in the body of this pleading. (Id., ¶ 3). While the complaint defied any easy or succinct description, its averments fell into several broad categories.

First, Mr. Cummings made a series of broad allegations that disciplinary hearings involving misconduct citations lodged against him between 2007 and 2021 were all invalid because the hearing officers were not notary publics. (Id., ¶¶ 5, 26, 28, 49). Beyond these broad allegations, which were a recurring theme in Cummings' complaint, the plaintiff also identified several specific disciplinary hearings where he asserted he was denied due process. (Id., ¶¶ 15, 16, 20).

Another recurring theme in Mr. Cummings' amended complaint was his allegation that prison officials have installed a device which allows them to surreptitiously communicate with Cummings and enables them to read his thoughts

and observe him in the most private and intimate of his personal activities. (Id., ¶¶ 28, 30, 31, 35). In fact, at various points throughout his amended complaint, Cummings stated that he was hearing the voices of these correctional staff who were communicating with him through this device. (Id.)

Further, in a number of instances Cummings' amended complaint alluded to what were ancient, decade-old disputes. Thus, many of Cummings' allegations related to temporally remote events that were alleged to have occurred as many as fourteen years prior to filing this lawsuit. (Id., ¶¶ 5, 12, 13, 14, 48). Mr. Cummings then made a series of somewhat more specifically focused claims regarding breaches of medical confidentiality, medical treatment, retaliation, and his conditions of confinement. Yet, while these allegations had some greater specificity, the plaintiff did not identify any allegedly culpable persons who engaged in this activity. (Id., ¶¶ 6-8, 24, 36-38, 40, 43, 44, 47, 53-55).

Mr. Cummings also averred that correctional staff were engaging in acts of waste, fraud, and abuse that were entirely unrelated to him, including misappropriation of gasoline and foodstuffs and requests a criminal investigation of these matters. (Id., ¶¶ 29, 50, 52). Moreover, Mr. Cummings described a series of incidents involving alleged verbal abuse of the plaintiff by correctional staff, matters that he insisted rose to the level of a constitutional tort. (Id., ¶¶ 23, 33, 51). Finally, in several instances, Mr. Cummings made specific allegations of

wrongdoing by particular correctional officers, including claims involving alleged retaliation, use of excessive force, denial of water, and adulteration of food by staff. (Id., ¶¶ 9, 15-17, 19, 21-23, 30-32, 39, 46).

Presented with the challenging *pro se* pleading, we conducted a painstaking screening review of this amended complaint. As a result of this review, we recommended that the case proceed forward with respect to the allegations set forth in paragraphs 9, 15-17, 19, 21, 22, 23, 30, 31, 32, 39, and 46 of the amended complaint, and that the amended complaint be served upon the following defendants named in those paragraphs of the amended complaint: Defendants J. Storm, P. O'Boyle, Zaremba, Yordy, Poccione, Turner, Robert Cress, W. Knappenberger, Newton and Chuma, Hearing Officer Weiderhold, as well as Defendants Luksh, Blommel, Lawrence, Aaron Walter, Chris Schultz, J. Simpson, Schickvam, Vanessa Horvath, Young, Voekler, and Clews. (Doc. 67).

The district court adopted this Report and Recommendation, (Doc. 75), and the amended complaint has been served upon these defendants. On January 18, 2022, one of the defendants, Andrew Newton, moved to dismiss this complaint. (Doc. 83). Cummings never responded to this motion to dismiss. Accordingly, on February 9, 2022, we ordered Cummings to respond to the motion by February 25, 2022. Our February 9 order also warned Cummings in clear and precise terms that "a failure to comply with this direction may result in the motion being deemed

4

unopposed and granted." (Doc. 89, at 2). After this deadline passed, we filed a Report and Recommendation, which recommended that Dr. Newton's motion to dismiss be granted. (Doc. 97). The district court adopted this Report and Recommendation, (Docs. 104 and 105), finding that:

> The report correctly recommends the dismissal the deliberate-indifference claims against Dr. Newton. "The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs" and, "[t]o act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Hayes v. Gilmore, 802 Fed.Appx. 84, 88 (3d Cir. 2020) (internal citations omitted). Even if plaintiff's mental health needs were serious, Dr. Newton's motion to dismiss will be granted because the deprivation of a blanket occasionally over a 4-year period does not state a plausible claim of deliberate indifference. Additionally, plaintiff's allegations against Dr. Newton do not sufficiently state his personal involvement with respect to the 8th Amendment claim. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence", and "[a]llegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." Id. at 87. (internal citation omitted). There is no particularity with respect to plaintiff's allegations against Dr. Newton. Finally, plaintiff does not allege that his psychiatric treatment by Dr. Newton fell below any professional standards of care, and he fails to state any actionable constitutional violation by the doctor. The court will not allow plaintiff to amend his claims against Dr. Newton any further since he has had already been allowed to file amended pleadings and any additional amendment would be unduly prejudicial to Dr. Newton.

(Doc. 104, at 7-8). However, dissatisfied with this outcome, Cummings has filed a one-page motion to reconsider, (Doc. 106), along with a motion seeking our recusal. (Doc. 107). Mindful that "a judge 'has as strong a duty to sit when there is

no legitimate reason to recuse as he does to recuse when the law and facts require[,]'" <u>Conklin v. Warrington Township</u>, 476 F.Supp.2d 458, 463 (M.D. Pa. 2007), for the reasons set forth below we find that the grounds for recusal posited by Cummings do not justify recusal. Therefore, the request for recusal must be denied.

## II.    <u>Discussion</u>

### A.    <u>Recusal Motion–Standard of Review</u>

The legal standards which govern such recusal requests were aptly summarized in <u>Conklin v. Warrington Township</u>, 476 F. Supp. 2d 458 (M.D. Pa. 2007). In terms that are equally applicable here, the court explained that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party....
>
> <u>Id</u>. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against [the plaintiff]. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." <u>Liteky v. United States</u>, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." <u>Edelstein v. Wilentz</u>, 812 F.2d 128, 131 (3d Cir.1987) (citing <u>United States v. Dalfonso</u>, 707 F.2d 757, 760 (3d Cir.1983)); <u>see also In re</u>

6

> Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id. at 462-63.

It is clear, however, that a party's disappointment with what the party anticipates may be the court's rulings cannot form the basis for recusal. As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:
>
> > [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

7

<u>Id.</u> at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some litigants, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case, or attempt to unilaterally choose a new judge. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. <u>In re Antar</u>, 71 F.3d at 101; <u>Alexander v. Primerica Holdings, Inc.</u>, 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." <u>Bryce v. Episcopal Church in the Diocese of Colorado</u>, 289 F.3d 648, 659 (10th Cir.2002) (quoting <u>Nichols</u>, 71 F.3d at 351); <u>Cooney v. Booth</u>, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); <u>see also United States v. Snyder</u>, 235 F.3d 42, 46 n. 1 (1st Cir.2000); <u>Curley v. St. John's University</u>, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

<u>Id.</u> at 463.

 Judged against these legal standards, we must decline Cummings' request that we recuse ourselves from this case since Cummings' request for our recusal rests upon our rulings and recommendations in this case. Since the Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal," <u>Securacomm Consulting, Inc. v. Securacom, Inc.</u>, 224 F.3d 273, 278 (3d Cir.2000), Cummings' disappointment with our decisions simply cannot be converted into grounds compelling our recusal. Accordingly, we conclude our legal analysis of this recusal motion as we began that analysis by

reminding Cummings that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require'" Conklin, 476 F.Supp.2d at 463. Guided by this basic truth, this recusal motion will be denied.

An appropriate order follows.

### III.   Order

For the foregoing reasons, the aspect of plaintiff's motion (Doc. 107), which seeks our recusal is DENIED.

So ordered this 18th day of April 2022.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

9